Can we establish for the record that you're not related to our colleague to my left? Yes, I was going to do that first, Your Honor. Thank you so much. No relation. It's a fine name. Yes, it is. Good morning, Your Honors. May it please the Court. My name is Richard Murphy. I'm here on behalf of the appellants J.B. and L.B., and L.B. is here with me, the parent at the table today. I would like to reserve three minutes for rebuttal, if I can. So, we are asking this Court to reverse the District Court's decision in this Individuals with Disabilities Education Act case. The District Court had erred in finding that the parent refused consent to evaluate the student and in finding that the school district had no obligation to make a new offer of a free appropriate public education to the student in January 2014. Here, the parent did all that the IDA requires of her. However, the district refused to complete the process based on the student's enrollment. She had given proper notice of her dissatisfaction with the district's IEP and services, gave notice of her intent to place the student privately at a private school. From that time, the parent made it clear that she wanted the IEP team to determine the student's needs and to develop a new IEP. The parent brought three evaluations, private evaluations, to the district to consider and the district was obligated to consider these evaluations in any decision with respect to the provision of FAPE to the student and that's under the regulations. The IEP was due to be updated at least annually, which means it was due to be updated no later than January 30, 2014 and under Arizona law at the time, parents request for an IEP, it failed to meet this procedural requirement. There was also a reevaluation that was due February 15, 2014 for the student that the district did not complete and it's also under Arizona law at the time, 60 days from the parent's request. So when we had the review of existing data meeting on December 3, that would indicate that the reevaluation should have been completed no later than February 3, 2014 and the district failed to comply with both of those procedural requirements. The parent participated with the district in two separate meetings designed to address the new information. They were reviewing these evaluations. They were not IEP meetings. They were meetings to review these evaluations to determine what additional testing might need to be done. The district court erred by finding that these were multiple IEP meetings and misinterpreted that the school district had met multiple times in IEP meetings and there weren't IEP was being reviewed at the time. However, you might characterize one, an outsider might characterize these meetings. Did there come a point in time where the school district, the Kyrene district, wanted to conduct its own evaluation of the child? There was discussions in the December 19, 2013. Can you answer my question yes or no? They did not ever seek consent from the parent. They discussed it in the meeting in December 19, 2013 that they wanted to discuss potentially doing some additional academic assessments and that was discussed in the meeting because they weren't sure if Dr. Belgin, one of the private evaluators, had completed all of the academic assessments or simply that the student was unable to complete those assessments. They wanted to wait for that and if you review the transcripts of the meeting, you'll see that the team agreed that they would wait to get information from Dr. Belgin and they described that as perfect when Dr. Belgin said he would get back to the parent and let the school know whether he had completed those evaluations after the winter break and the school said that was perfect. There was a discussion of doing observations that they wanted to conduct for the student to complete that reevaluation and the team agreed at the meeting in the transcript as well as noted in the prior written notice that they would agree to do video observations because they tried in-person observations before and that traumatized the student. So the school district agreed with the parent's request to do video observations, but the school district significantly never got to the point where they said we are going to conduct or want to conduct these evaluations and we are seeking the parent's consent to do so. They never reached that point. Well, part of the reason for that was because L.B. provided them with a letter at the end of that December 19 meeting that set out agreements and restrictions on the school district's behavior that was not only not previously discussed at the meeting, but unacceptable to the school district so they didn't have an opportunity to get to the point of making an IED, right? That is, it is correct that the parent at the end of the meeting presented what is called a counteroffer. The school district had made an offer on December 18th. I mean, I thought everybody was on the same page at the end of the meeting and when you say that the school district agreed, the fact of the matter is, from my reading, the school district wanted to examine, or as you say properly, evaluate the student at the private school that they were paying for and the plaintiff's expert or psychotherapist said that would traumatize the child and instead of insisting on their course of action, they said, okay, we'll do these things. We can't do speech therapy, for instance, but we can do a couple of these other observations by video teleconferencing and then at the end of the meeting, everybody seemed to be on the same page, right? That is correct. Everybody was on the same page at the meeting that they were going to do these video observations. The parent was merely responding to a district's offer that was outside of the IDA process. The district had made an offer to say, we're going to pay for an additional month at the private school after the parent and only after the parent re-enrolls the student. That was one of the first terms of that agreement that the district had proposed. Well, to be fair, they could have insisted the student come back June 30, right? I think they bent over backwards, frankly, to keep this young man for an additional month in a private school and pay for it and transport him there while they tried to sort these situations out. I would observe that. Well, the district did agree to pay for the private school from October through December. That was because the parent had given their notice that they disagreed with the school and they were potentially seeking a due process complaint. So the school district was trying to avoid that. But the district bending over backwards, I disagree with that characterization because the law required that once the parent came back to them with the evaluations, the district was required to have these meetings and review the evaluation and develop a new IEP. Let's talk about what I think is probably, to me, the most significant issue in the case. The December 19th meeting occurred. The plaintiff submitted her counterproposal. The district found it unacceptable and too restrictive, so they didn't do anything. And then they issued a prior written notice that said the district won't complete an IEE for the student because the student is not attending a school in the district. And as the student is not currently a student enrolled in the district, no meetings will take place. That's true, but that's insufficient under the IDEA for not proposing an IEE. And moreover, it would seem to me that the real reason that they didn't state that the real reason that they didn't provide the IEE was because the plaintiff had put forth this counterproposal that they couldn't live with. But that's what the case comes down to, to me. May I clarify, Your Honor? You said IEE, and there's a number of acronyms in the IDEA. Are you saying IEP? IEP. My mistake. I apologize. I just want to make sure I'm responding to that because there was an IEE issue with one of the ... My mistake on that. Sure. Thank you. So I believe that is the crux of the case, Your Honor, is that the parent had asked for multiple times the school district to develop the IEP, a new IEP for the student, by the annual deadline. And the district was obligated to do that because the parent had requested that. Separate and apart from that, outside of the IDEA process, the school district presented an offer that has no impact whatsoever on the school district's obligations. They were saying, we're going to pay for an additional month of time at the school if you agree to the following. And what they asked the parent to agree to first was the parent had to enroll by December 20th, which is prohibited under the IDEA. The reason they did that is they had been acting this entire time as though anything that they did for the parent and for the student after October of 2013 was an accommodation to the parent as opposed to an obligation under the IDEA once the parent had requested an IEP. So they were obligated to do the IEP, and they never did that because the student was unenrolled and the parent didn't agree to re-enroll the student. But that's not required under the law. So the parent did reject that offer from the district to pay for an additional month, but she didn't disclaim the obligation that the school had to continue with the IEP process. Even in her counteroffer that she submitted on December 19th at the meeting, she agreed with the school district's term that she would attend a MET meeting, which is an evaluation meeting, and an IEP meeting before the end of January 2014. That was the second term in the school district's offer and the second term in the parent's counteroffer. All the parents suggested in that counteroffer was that to the extent the district needs to seek additional evaluations, she's going to want informed consent. She's going to want to give informed consent. And the school district never got to that point. They never proposed consent in writing to the parent. They never sought informed consent, which is their obligation. And they stopped the process solely because the student was unenrolled. They didn't stop the process because... I mean, practical question. Would the school district, to obtain your client's consent, have to meet all the demands and conditions that she set forth in her counterproposal to obtain consent? Because there are a number of things there. You can't do this. We won't agree to... In the counterproposal, that is. You understand. So the question is, you make reasonable efforts to do something and someone just doesn't agree. That's fine, but you don't have to do everything that's in the counterproposal to obtain or effort to obtain consent, I guess. That's my question. Sure. What was in the counterproposal for the parent was, once the district proposes evaluations, I'm going to want five days to give informed consent for whatever the district does propose. The district at that point hadn't proposed it, and to be clear, the parent wrote the counteroffer before the meeting. The meeting occurred, and she presented the counteroffer because she had provided the offer from the district and she wanted to respond to that offer. It was independent of what was going on in the IEP meeting, and nothing in the counteroffer really addresses or puts additional conditions on it. It said something about the observations, but the team had already agreed 10 minutes before in the meeting that they would agree to video observation. So there was no additional constraints on the district that were placed in there. The main difference of opinion in the counteroffer and the district's offer was, parent wanted this placement at Brightmont to be treated as an IEP from the beginning. The school district refused that, stopped the process, reversed course from what happened in the meeting where everybody at the meeting agreed that they were going to have an additional meeting to have an IEP for the student, and they reversed course and stopped it because the student was no longer enrolled. Was the fundamental difference between the offer and the counteroffer that the parents wanted to continue the child in private school and the district wanted the child to return to public school, is that the fundamental difference? I believe that the fundamental difference in the agreement was the district didn't want to treat the placement where the student had been at Brightmont as an IEP placement. But what the parent had asked for from the time she gave notice was she wanted the school district to develop an IEP for the student and make a decision as to where he should go. And the parent was open to what the IEP was going to provide, and under the law, the district is required to make a specific offer of public education, which they failed to do here following the meeting based on enrollment, which is prohibited under the IDA. I wanted to reserve some time for rebuttal. Thank you, Your Honor. All right, we'll hear now from Mr. Schwartz. Good morning, Your Honors. I'm David Schwartz. I'm here with Heather Pearson where I'm here on behalf of the Kyrene School District. We'd like this court to affirm a detailed, thorough findings of fact and conclusions of law by the administrative law judge who heard the evidence. It was reviewed by the district court who relied upon those findings of fact to create its own conclusions of law, and we believe that this court should affirm that the district complied with its IDA obligations. Let's talk about what the IDA obligation was. It was to have an IEP while a child was enrolled within the school district. They developed that in January 2013. It was good and effective providing FAPE, free appropriate public education, through at least January 30th of the following year. Everything that happens, happens in the year of 2013. The school district, excuse me, was providing FAPE at all times, regardless of where the student was, until the parent withdrew the student from the school in September, which led to a September 19th meeting of the IEP team, where the IEP team reaffirmed that the proper placement for this student was in a self-contained classroom. At that time, it was Paloma hiring in the elementary school, but they were willing to consider maybe moving it to a different one because the parent didn't like Paloma. So the next thing was the IEP team met on October 2nd. That's when they considered these outside evaluations, none of which were done in an inappropriate for the district to rely upon, but they still considered them. They said, hey, we need more evaluations. They made an offer. Hey, we want to go, we're willing to pay for a bright month, the school you want, even though it's not the least restrictive environment, which the IDA mandates. We're willing to do that, but we want certain things. We want observations. We want evaluations. We want to be able to find out, is this working out, because the student had progressed while the short period time in August up through this last day in September at the school district itself. So do I, if I understand correctly, the district's position with regard to evaluation of the in a public school setting, is that correct? No, no, no. If I gave you that impression, I apologize. That's why we have this call, so you can straighten me out. The district position is that the proper place for this child to receive services and special education was in the district in a self-contained classroom. The evaluations of the student for potentially revising the existing IEP could, of course, happen where the child was currently going to school, which was bright month. It wasn't a question of, oh, no, you've got to bring this child back to a chyrene district for the evaluations. No, they wanted to see what his present levels were, things of that nature, give him a language test. Is it the district's position that the parent failed to provide consent for further evaluations and that relieved the district of further obligations? It is the district's position that the parent did not ever provide consent for further evaluations as the district requested of its own personnel. And what legal consequence follows from that? The legal consequence is that does absolve the district of going forward because it's unable to revise the IEP. I'm wondering about the regulation here because, and I'm looking at 300-300, because it says if a parent of a child who is homeschooled or placed in a private school by the parents at their own expense does not provide consent for the initial evaluation or the re-evaluation where the parent fails to respond to request to provide consent, the public agency may not use the consent override procedures and the public agency is not required to consider the child as eligible for services. But it says at their own expense. But my understanding is that the parent didn't enroll the child in the private school at her own expense. It was paid for by the district. Why is that phrase in the regulation and is that a problem for you? Well, I don't view it as a problem. I can't explain to you why the regulation wording is the way it is. But what I take that to mean is when... What are the facts on that? Was he placed in a private school by the parents at their own expense? And that was what happened here. That the parent enrolled the student at Brightmont, that the parent was responsible for paying for that. In October and thereafter, there were discussions about, hey, the district, will you reimburse and or pay directly Brightmont during that? We thought we had an agreement in early October, but apparently we did not. Because in December, the parents said, oh no, we're not moving. We're not going to go back and transition. Your question, and I assume the record is clear on this. Who paid the money for the schooling at the time? Who was paying the money for Brightmont at the time the consent was that the district claims that consent was not provided? Well, the first time when consent wasn't provided was started in October. At that time, without a doubt, the parent, excuse me, the parent was paying. By December... Was that reimbursed? I'm sorry? Was that reimbursed by the district? Yes. As part, as what we thought of as an agreement reflected in emails October 3rd and 4th that were presented as part of the case, we were going to ultimately be responsible. So when things came to a head in December, who was paying for the schooling at Brightmont? At that point, as you see from their counteroffer, no one was actually paying Brightmont. That question begs for a very straight answer. Yeah. Who was paying at that point? The district under what it's assumed was agreement was responsible. The answer to my colleague's question is the district, period. Correct. Actually, technically, the answer is no one had paid Brightmont as at that time. But I think your point is well taken, Judge Hawkins, that the district was responsible and was eventually did pay. That's why the counteroffer says that. Okay, but if that's true, then here's the problem I have. The regulation just doesn't apply by its terms. If the district was paying the expenses, then it's not the case that the student was placed in a private school by the parents at their own expense. So this regulation doesn't apply, doesn't absolve you. And instead, it looks like you're covered by the default rule in the regulation, which generally says that you may not use a parent's refusal to consent to one service or activity to deny the parent or child any other service, benefit, or activity. You can require, and then it also says in paragraph two, a state may require parental consent for other services and activities under this part if it ensures that each public agency in the state established and implements effective procedures to ensure their parents refusal to consent does not result in a failure to provide a child with FAPE. So I'm having a hard time seeing how you get anything out of the refusal of consent because of this technical wording. It does, in fact, if it did apply, it would clear you of obligations. But it does require that they be doing it at their own expense, which doesn't seem to be true. So this, am I wrong in thinking that this whole idea, I mean, you have other arguments in the case, but the whole idea related to failure to provide consent for evaluation just sort of drops out of this? I wouldn't necessarily agree with that, but I understand your position, Your Honor. Okay, but do you, is it your view that you have alternative arguments if this argument fails that you're not absolved because of the failure to consent to evaluation, that you have other arguments? We do have other arguments. As the Capistrano court noted, the IDEAA in 1412, make sure I got the number right, A10C indicates when students are in private schools that the district is not required to prepare an IEP for that student. So what says that? In Capistrano, they said that 20 U.S.C. 1412 A10C, when a student is enrolled in a private school, the district is not required to provide this special education and services and to do the IEP. And specifically, I'm looking in part in, well, Head Note 22 under subsection C, the first paragraph, and then farther on at the, where it says section 1412 A10 governs the provisions of services for children in private school, and it has three subparagraphs. The first is entitled children enrolled in private schools for their parents and provides among other things not relevant here, that such children need not be given an IEP. Do you know what page that's on? Page 1138, sorry. I don't have a PDF that, I had to go search for it. But of course, this child already had an IEP. They had an existing one. And as Capistrano points out, going forward, that would continue to be a valid and appropriate IEP for them. The purpose of the evaluations is to aid in crafting a new IEP that was due in January for that. They weren't under obligation to do that new IEP until the end of January under the IDA. And so, while I do believe the parental consent, there certainly is a failure to consent for that. And that's noted, I disagree with Mr. Murphy, that it's noted actually in prior written notice that the parent had rejected various requirements, including the district's requirement of a personal observation in a school setting. The school psychologist testified. All right, but to go back to where I was in the earlier argument, the school district never wrote in its written notice that it was not issuing an IEP for failure to consent to these tests. They said the student's not attending a school in the district and is not a student enrolled in the Kyrene District. And neither of those are reasons not to prepare an IEP, correct? Well, as it relates to a student in a private school, I've just quoted to you a statute that suggests it actually is correct. But secondarily, the other thing is the prior written notice, they're not written by lawyers either. Okay? I recognize that the parent has a right to get them and to explain the reasons, but we can't seize on just a couple of words and ignore the fact that that same prior written notice reflects in several occasions how the parent had rejected proposals and had refused to consent. I don't know if you were here for the earlier cases, but do you have authority for the proposition that the rationale set forth in the prior written notice, even though contrary to all the evidence on record before the ALJ, including the transcripts, should not be given deference? I don't think it's a question of deference, Your Honor. I think my point is, number one, it theoretically could be a procedural violation if you only wanted to look at certain words saying, we're not going to go forward with MET and IEP because he's not enrolled, and ignore the fact that the same prior written notice does, in fact, talk about the parent rejected and refused to consent to certain things that the district had proposed and said were crucial. My point is, the district is not necessarily bound forever because it didn't have lawyers there to draft it up where the reasoning is actually in the prior written notice itself. Did you say there was a prior written notice that said we're not preparing an IEP due to failure to consent? No, I didn't. If I gave you that information, I apologize. I don't know that you did. I thought maybe I heard that, which is why I asked. Go right ahead. No. The prior written notices before were just about, hey, she had indicated she was not willing to move forward. We think for the reasons I've talked about today and as set forth in brief, this court should find that there was no clear error and that the district did not, in fact, commit a violation which justifies, because not every procedural violation justifies substantive relief under the IDA, as we've pointed out. We think this court should affirm. Thank you very much for your time. Thank you, counsel. We'll hear rebuttal now from Mr. Murphy. Thank you, your honors. So in Capistrano and in Bellflower, the holding is when a parent of a privately placed student seeks an IEP from the school district of residence, all they need to do is ask and the school district is required to develop the IEP and the school district failed to do that here, not because the student, the parent had refused consent, but because the student was no longer enrolled in the school. And the record is clear. That's the prior written notices at ER 345. It notes that they are stopping this process because of that. And also in that same prior written notice, they note that the parent and the school district agreed to discuss, agreed to conduct the video observations. So you cannot have a situation where the parent has refused to consent something to some evaluations when the school district never seeks consent in writing, never notifies the parent of that in the prior written notice. And the prior written notice is mandatory under the IDA for the school district to notify the parent of the decisions they made and the basis for those decisions. And they failed to do that. The parent took action as a result of the prior written notice and the school can't change their mind years later and say, oh, now it's because of consent. None of the prior written notices in this case indicate that the parent refused consent to any evaluations that were being sought. All right. Counsel, as you're over your time, do you have a further question? Yeah, I do. Thank you very much. Here's my question. Is this dispute capable of mediation? Capable of mediation, Your Honor? Yes. Would the parties object to the court referring this to our office of mediation and seeing if the case can be resolved? We would be open to discussions of resolving this matter, Your Honor, but we believe that we've established that the case should be reversed. We understand your position, but you're willing? We would be willing to discuss that. School district? Governing Board has to deal with any settlement issue, but I would certainly recommend it. Certainly be open to having that as a possibility. Thank you. Thank you, Your Honors. All right. Thank you, Counsel. The case just argued will be submitted and we'll proceed to hear argument.
judges: HAWKINS, COLLINS, Murphy